Donnie R. Cox, SBN 137950
Law Office of Donnie R. Cox
402 North Nevada Street
Oceanside, CA 92054-2025
Telephone (760) 400-0263, Facsimile (760) 400-0269
drc@drcoxlaw.com

Paul W. Leehey, SBN 92009
Law Office of Paul W. Leehey
250 E. Fig Street, Ste. 501
Fallbrook, CA 92028
Telephone (760) 723-0711, Facsimile (760)723-6533
law@leehey.com

Joseph B. Weinberger, SBN 136798
Weinberger Law Firm
1839 Iron Point Road, Suite 180
Folsom, CA  95630
Telephone (916) 357-6767, Facsimile (916) 357-6766
joe@weinbergerlaw.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHELLE MARIE STIVERSON and K.S-M., a minor, by and through her Guardian Ad Litem, Danielle Stiverson,<br><br>    Plaintiffs,<br><br>  vs.<br><br>COUNTY OF SACRAMENTO, TANYA COIT, ANA NGUYEN, and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br><br>**JURY TRIAL REQUESTED** |

1

**JURISDICTION AND VENUE**

1.     This action is brought pursuant to 42 U.S.C. § 1983 to seek redress for Defendants' actions taken under color of law. Defendants' conduct deprived Plaintiffs of their fundamental constitutional rights secured to them under the United States Constitution, including the Fourth and Fourteenth Amendments, and under federal and applicable state law protected thereby.

2.     Jurisdiction is conferred by 28 U.S.C. §§ 1343(a)(b) and 1343(a)(4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983. Jurisdiction is also conferred by 28 U.S.C. § 1331 because the claims for relief derive from the United States Constitution and the laws of the United States.

3.     The acts and omission complained of herein occurred in the County of Sacramento, and it is believed that all parties resided in the County of Sacramento within the Eastern District of California at the time of the occurrences herein.

4.     Plaintiffs make the following allegations and claims upon personal belief, investigation of their counsel and on information and belief.

**THE PARTIES**

5.     At all times relevant to this Complaint, Plaintiffs Rachelle Marie Stiverson (hereinafter referred to as "Rachelle"), and K.S-M., a minor, were residents of Sacramento County, California. Application has been made to appoint Danielle Stiverson as the Guardian ad Litem for K.S-M. in this action.

6.     At all times mentioned herein, Defendant COUNTY OF SACRAMENTO (hereinafter the "COUNTY") was and is a public entity organized and existing under the laws of the State of California. The COUNTY specifically includes its subdivisions and entities Sacramento County Department of Health & Human Services ("DHHS") and Child Protective Services ("CPS").

7.      At all times mentioned herein, Defendant TANYA COIT (hereinafter "COIT") was an officer, agent, and employee of the COUNTY and its DHHS/CPS.

8.      At all times mentioned herein, Defendant ANA NGUYEN (hereinafter NGUYEN) was an officer, agent, and employee of the COUNTY and its DHHS/CPS.

9.      Plaintiffs do not know the true names and capacities of those Defendants sued herein as Does 1 through 50, inclusive, and therefore sue them by such fictitious names. Plaintiffs will amend this Complaint to show the true names and capacities of said DOE Defendants when the same are ascertained or upon proof of the same at the time of trial. Each of the fictitiously named Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiffs in that their conduct caused the damages and injuries set forth herein.

10.     Plaintiffs are informed and believe and, based upon such information and belief allege, that each of the Defendants is responsible in some manner for the events and happenings referred to herein and was the legal cause of injury and damages to Plaintiffs as herein alleged.

11.     Plaintiffs are informed and believe and, based upon such information and belief allege, that at all times herein mentioned, each and every Defendant was the agent and/or employee of their co-Defendants, and each of them, acted at all relevant times herein under color of the authority of a governmental entity under the statutes, ordinances, regulations, customs and usage of the State of California and/or the United States Constitution and related laws.

12.     Whenever this Complaint makes reference to any act of Defendants, such allegations shall be deemed to mean all named Defendants, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants (or any of them) and who agreed upon, approved or

ratified each other's conduct, or otherwise conspired together to commit all of the acts and/or omissions alleged herein.

## COMMON ALLEGATIONS

13.     This action arises during an investigation and proceedings of a juvenile dependency investigation pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code initiated or conducted by Defendant County regarding K.S-M, and affecting Rachelle.

14.     At all applicable time Plaintiff Minor K.S-M. resided with Rachelle.

15.     On or about August 4, 2016, Rachelle's mother claimed that K.S-M. (who was 5 years old), was claiming she had been sexually abused. The claim that while K.S-M. was playing with a cousin, Rachelle's mother found the young children naked under the covers on a bed. When Rachelle's mother asked K.S-M. what they were doing, K.S-M. made several inconsistent statements, one of which indicating  she may have been sexually abused by Rachelle's boyfriend. When Rachelle arrived home, she and her mother began to argue and police were called.

16.     Based upon his brief interview with K.S-M. and statements from Rachelle and her mother, Citrus Heights Police Officer David Moranz took K.S-M. into protective custody and transported her to the Sacramento County Children's Receiving Home ("CRH") where he turned her over to Child Protective Services social workers.

17.     After being admitted to CRH, K.S-M. was placed by county with foster parents.

18.     On or about August 5, 2016, and thereafter while in the care, custody and control of County, and with no consent from K.S-M's mother Rachelle, no exigency, and no valid Court Order, and without Rachelle's knowledge or presence, medical procedures, including examinations, were conducted on K.S-M by and/or with the consent, authorization and knowledge of County through its employees and/or agents. Plaintiffs are informed and believe that these medical procedures, including physical

examinations, included, but may not be limited to, a full body inspection including K.S-M.'s genital and/or anal areas, including colposcopic pictures, and other procedures and testing. The full extent and nature of the medical procedures, including examinations, are subject to further discovery.

19.     The aforesaid medical procedures, including examinations, included procedures that took place on or about August 8, 2016, whereby the COUNTY, through Defendant COIT and Does 1-50, requested and made arrangements for K.S-M. to be taken to the Bridging Evidence Assessment & Resources (BEAR) Center, of Sutter Health, for a child forensic medical examination. The forensic examination was performed on August 9, 2016. The examination included a colposcopic and direct visual examination and photographing of K.S-M.'s genitalia and anus and hymen. The results of the examination were normal.

20.     In addition, Plaintiffs are informed and believe that on or about August 22, 2016, the COUNTY, through Defendant NGUYEN and Does 1-50, requested and made arrangements for K.S-M. to be taken to the Bridging Evidence Assessment & Resources (BEAR) Center, of Sutter Health, where she was subjected to another medical examination and medical procedures on August 22, 2016. Again the results of that physical examination were normal.

21.     Plaintiffs are informed that there may have be other medical procedures, including examinations, that K.S-M. may have been subjected to (including a CHDP and dental procedures). All of the aforesaid medical procedures, including examinations, including the invasive forensic sexual abuse examination, were performed without parental knowledge or consent, were conducted in the absence of exigent circumstances and/or any need for urgent medical attention, and were conducted without valid Court order after application and notice and opportunity to be heard by Rachelle.

22.     Rachelle was not notified of these medical procedures, including examinations, including the invasive forensic sexual abuse examination, conducted on

K.S-M. No one attempted to obtain Rachelle's consent, and she was completely excluded from her child's medical procedures, including examinations, and was not allowed to be in the nearby vicinity. No attempt was made to obtain Rachelle's consent or to notify her when and where said medical procedure, including examinations, would occur and whether she could be present. The only "consent" for the examination on August 9, 2016 was given by the foster parent with whom K.S-M. had been placed only days before. At the time of that examination, no Detention Hearing had been conducted, and there had been findings whatsoever on the child abuse allegations. Similarly, the examination on August 22, 2016 was conducted without Rachelle's consent or notification, or presence, and without court order or exigency.

23.    Defendants COIT, NGUYEN and DOES 1 to 50 knew that K.S-M. would be subjected to medical procedures, including examinations, but failed to ask Rachelle's consent or inform Rachelle of said medical procedures, including examinations, before they occurred.

24.    The medical procedures, including examinations, of K.S-M., including the invasive forensic sexual abuse examination, were performed pursuant to the COUNTY's policies, procedures, customs and/or practices. Plaintiffs are informed and believe, and based thereon allege, that the COUNTY performs medical procedures, including examinations, on every child that is admitted to its CRH. The COUNTY's policies, procedures, practices, and/or customs, and/or training and/or supervision, or lack thereof, permit or allow these medical procedures, including examination, to be conducted without parental notice or consent and without an urgent medical need or to preserve evidence; and without informing parents of the medical procedure, including examinations; and excluding parents from attending such medical procedure, including examinations, when they occur.

25.    Plaintiffs are further informed and believe, and based thereon allege, that the COUNTY orders invasive forensic sexual abuse examinations on every child that is

alleged to have been sexually abused. The COUNTY's policies, procedures, practices, customs, and/or training permit or allow these medical procedures, including examination, to be conducted without parental notice or consent and without an urgent medical need or to preserve evidence; and without informing parents of the medical procedure, including examinations; and excluding parents from attending such medical procedure, including examinations, when they occur.

26.     Plaintiffs are informed that the medical procedures, including examinations, of K.S-M. found no evidence of abuse of any kind and concluded that she appeared healthy and well.

27.     Plaintiffs are informed and believe that the COUNTY, through the named social worker defendants, collaborated with other social workers, County employees, doctors, medical providers and others (Does 1 to 50) who participated in conducting or allowing to be conducted unwarranted, non-consensual and non-emergent medical procedures, including examinations, of children at CRH, a COUNTY operated facility, and/or at the BEAR Center, without the minors' parents' presence, all of which constitutes a traditional government function performed as state actors.

28.     The right to family association includes a parent's right to make important medical decisions for their children, rather than the state (see *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) and cases thereafter). That right includes a parent's right to control the nature and scope of any medical procedures, including examinations that are conducted on his or her child. Absent parental consent, valid court order, or exigent circumstances, medical procedures, including examinations, of a parent's child, may not be undertaken at the behest of state officials.

29.     Children have the right to have their parent present, and parents also have a constitutional right to be with their children, while receiving medical procedures, which include examinations or for the parent to be in close proximity while all or part of the

medical procedures, including examination, are being conducted. (see *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) and cases thereafter).

30.    The right of parents to make medical decisions about their children and to be present during their children's medical procedures, including examinations, in the absence of a valid warrant or order, parental consent, or emergency, and with parental presence, was clearly established by at least 2000. Additionally, as of August 2016, the COUNTY, COIT, NGUYEN and DOES 1 through 50 unquestionably knew that medical procedures, including examinations, conducted in the absence of a valid warrant or order, parental consent, or emergency, and without parental presences, violated the constitutional rights of children and their parents.

## FIRST CLAIM FOR RELIEF

### (Violation Of Civil Rights Under 42 U.S.C. § 1983 -- By Plaintiffs Against INDIVIDUALLY NAMED DEFENDANTS COIT,  NGUYEN and Defendants Does 1-50)

31.    Plaintiffs allege, and to the extent applicable, incorporate herein as if set forth in full, all paragraphs set forth hereinabove.

32.    Plaintiffs are informed and believe and based thereon allege that Defendants COIT, NGUYEN and Does 1 through 50, inclusive, and each of them, knew and agreed, and thereby conspired, to cause and allow K.S-M. to be subjected to unlawful medical procedures, including examinations, and specifically including an invasive forensic sexual abuse investigations, without proper and just warrant after due process, without reasonable cause, without parental consent or presence, without exigency, and without urgent medical need or need to preserve evidence, while in the care and custody of the COUNTY (i.e. see *Wallis v Spencer*, 202 F.3rd 1126 (9th Cir. 2000). Plaintiffs are further informed and believe, and based thereon allege, that Defendants COIT, NGUYEN and DOES 1 through 50 acted with deliberate indifference to the rights of Plaintiffs in so acting.

33.     Defendants COIT, NGUYEN and DOES 1 through 50 conspired to interfere with and violate the civil rights of Plaintiffs, as set forth under 42 U.S.C. §1983, including violation of K.S-M.'s rights found in the Fourth Amendment and all Plaintiffs' rights found in the Fourteenth Amendment of the United States Constitution. Such conduct includes, but is not limited to, acting, conspiring and allowing and causing K.S-M. to be subjected to unlawful medical procedures, including examinations, without valid warrant or order after due process and notice and opportunity to be heard, without reasonable and just cause, without parental consent or presence, without exigency, and without urgent medical need or need to preserve evidence. Defendants COIT, NGUYEN and DOES 1 through 50 knew, or should have known, Plaintiffs' constitutional rights were clearly established and that by so acting, they were violating and interfering with Plaintiffs' constitutional liberty interests, including their right to familial association and their procedural due process rights under the Fourteenth Amendment, as well as violating K.S-M.'s Fourth Amendment rights against unreasonable searches and seizures.

34.     Defendants COIT, NGUYEN and DOES 1 through 50 knew that Plaintiffs' rights would be violated and that their actions would result in the unlawful physical examination of K.S-M. without Rachelle's consent or presence or without a valid court order.

35.     As a direct result of the aforesaid conduct of the Defendants COIT, NGUYEN and DOES 1 through 50, and in accordance with 42 U.S.C. § 1983, Plaintiffs' civil rights were violated in that they have suffered, and will continue to suffer, damages, including, but not limited to, constitutional injury, violation of human dignity, physical and/or mental anxiety and anguish; as well as to incur attorneys fees, costs and expenses in this matter, as authorized by 42 U.S.C. §1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

36.     The conduct of Defendants COIT, NGUYEN and DOES 1 through 50 as herein alleged was intentional, done with malice, and/or with conscious disregard for the

rights of the Plaintiffs. As a result of Defendants' despicable conduct, Plaintiffs are entitled to recover punitive damages from Defendants COIT, NGUYEN and DOES 1 through 50 for the purposes of punishing said Defendants and to deter others from such conduct in the future.

## SECOND CLAIM FOR RELIEF

### (*Monell*-Related Claims By Plaintiffs Against the County)

37.     Plaintiffs allege, and to the extent applicable, incorporate herein as if set forth in full, all paragraphs set forth hereinabove.

38.     At all relevant times herein, Defendant COUNTY, including through its DHHS and CPS and CRH, established and/or followed policies, procedures, customs and/or practices (hereinafter collectively referred to as "policy" or "policies") which policies were the cause of the violation of Plaintiffs' constitutional rights granted to them pursuant to 42 U.S.C. § 1983, as well as the case of *Monell v. New York City Department of Social Services* (1978) 436 U.S. 658, including those under the Fourth and Fourteenth Amendments; including, but not limited to:

a.   The policy of causing medical examinations, treatment, testing and/or procedures of a minor child without the knowledge, consent, presence and/or authorization of the parent(s) or legal guardians, and without exigency (imminent danger of serious bodily harm), without medical need or urgency, and without valid court order (including without proper application, notice and opportunity to be heard, and due process to their parents);

b.   The policy of not allowing children and parents to have a parent present at their minor child's medical procedures, including physical examinations and/or treatment, while in the care and custody of the County.

c.   By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train and supervise its officers, agents and employees, in providing the Constitutional protections

guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, and under California law, which protects such rights in regards to the medical procedures, including examinations, of children while in the care and custody of the County.

d. By acting with deliberate indifference in implementing a policy of failing to correct, counsel and /or discipline its officers, agents and employees, for violating the Constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, and under applicable California law, in regards to the medical procedures, including examinations, of children while in the care and custody of the County.

(The list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile records, which are subject to access, use, and/or disclosure pursuant to California Welf. & Inst. Code §§ 827 & 828 and as the depositions of witnesses, including the person(s) most knowledgeable for the COUNTY have not been taken.)

39.     The COUNTY knew from the Ninth Circuit Rulings in *Wallis v. Spencer,* 202 F.3d 1126 (2000) and *Greene v. Camreta*, 588 F.3d 5011 (9th Cir.2009), that a parent had the right to make important medical decisions for their children, including the nature and scope of any medical procedures, including examinations, that are conducted on their child without unjustified governmental interference; and that parents had the right to be present during their child's physical and medical examination; and that the medical procedures, including examinations, of children  while in the care and custody of the COUNTY without parental consent, parental presence, exigency, urgent medical condition, preservation of evidence, or with valid court order (after due process is provided) violated a family's (parents and children's) constitutional rights.

40.     Despite this knowledge, Plaintiffs are informed and believe, and thereon allege, that the COUNTY conducted medical procedures, including examinations, on

every child who entered its CRH without parental consent, valid court order, exigency, or urgent medical need; and without parental presence.

41.     Plaintiffs are further informed and believe, and thereon allege, that the COUNTY ordered that invasive forensic sexual abuse examinations be conducted on every child who was alleged to have been sexually abused, without parental consent, valid court order, exigency, or urgent medical need; and without parental presence.

42.     Defendant COUNTY had a duty to Plaintiffs at all times to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the Fourth and Fourteenth Amendments; to use reasonable care to select, supervise, train, control, review, counsel and discipline the activities of all agents, officers and employees in their employ; and further, to refrain from acting with deliberate indifference to the Constitutional rights of Plaintiffs herein so as to not cause the injures and damages alleged herein.

43.     Defendant COUNTY breached its duties and obligations to Plaintiffs, including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, practices and/or customs; by failing to properly select, supervise, train, control, review, counsel and discipline their agents and employees as to their compliance with Constitutional safeguards; and by encouraging and permitting Defendants COIT, NGUYEN and DOES 1 through 50 to engage in the unlawful and unconstitutional conduct as herein alleged.

44.     Defendant COUNTY knew, or should have known, that by breaching the aforesaid duties and obligations, it was foreseeable that it would, and did, cause Plaintiffs to be injured and damaged by its wrongful "policies" and acts, or lack thereof, as alleged herein and that such breaches occurred in contravention of public policy and as to their legal duties and obligations to Plaintiffs.

45.     These actions, or inactions, of Defendant COUNTY are the legal cause of injuries to Plaintiffs as alleged herein; and as a result thereof, Plaintiffs have sustained general and special damages, as well as incurring attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988; to an extent and in an amount subject to proof at trial.

46.     Plaintiffs are informed and believe that the policies, procedures, practices, customs, actions or inactions of Defendant COUNTY as alleged herein will continue, and will harm the rights of Plaintiffs and children, parents and families similarly situated unless and until enjoined from doing so; and hereby make application for such relief.

<b>PRAYER</b>

WHEREFORE, Plaintiffs request trial by jury and pray judgment against Defendants as follows:

**First Claim for Relief**

1.     General damages and special damages according to proof;
2.     Punitive Damages against the individual defendants.
3.     Attorney's fees, costs and expenses pursuant to 42 U.S.C. §1988, and any other appropriate statute;
4.     Costs of suit incurred herein;
5.     For a Jury Trial on all issues; and
6.     Such further relief as the Court deems just and proper.

**Second Claim for Relief**

1.     General damages and special damages according to proof;
2.     Injunctive Relief;
3.     Attorney's fees, costs and expenses pursuant to 42 U.S.C. §1988, and any other appropriate statute;
4.     Costs of suit incurred herein;

////
////

5.    For a Jury Trial on all issues; and

6.    Such further relief as the Court deems just and proper.

DATED: August 2, 2018          LAW OFFICE OF DONNIE R. COX

_____

DONNIE R. COX Attorney for Plaintiffs

14